## Moorhead *versus* Scofield.

1. A. agreed to sell to B. a mining property, the real estate and ma-
chinery. B., it was agreed, should have the right of possession and
the product of the mine upon his making the down payment, until the
first payment should become due. This payment was a certain amount
of cash and notes, with security for the balance of the purchase money.
A. agreed to convey to him the title of the property, upon his paying
this cash and secured notes. B. paid the down payment, took posses-
sion of the property and paid the cash part of the first payment, gave
the notes, but without the security required. He continued in posses-
sion, but not having secured or paid the notes, the title of the property
was not conveyed to him. By an arrangement of B. with C., he con-
veyed to C. all of his own individual property on the premises, and C.
agreed with B. to get A. to convey to him, C, the title to said mining
property, which A. did. B. then brought an action of trover and con-
version against A. to recover the value of the personal property, the
title of which he, A., had conveyed to C. *Held*, reversing the court
below, that B. had no cause of action.

2. To maintain his action, it is essential for a plaintiff in trover and con-
version to show that the right of property was in him at the time he
commenced his action.

3. Trover and conversion does not lie where the plaintiff has the pos-
session of the property of which the defendant has the title, and the
defendant simply asserts his right to dominion by a sale of his title,
unaccompanied by actual taking or delivery of possession.

January 26th, 1886. Before MERCUR, C. J., GORDON,
PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 2, of *Phila-
delphia county :* Of July Term, 1885, No. 13.

This was an action of trover and conversion (James K.
Scofield against J. Barton Moorhead) for the conversion of
certain personal property upon a mining property in Georgia.
The plea was: Not guilty.

The facts of the case, as they appeared on the trial before
HARE, P. J., sufficiently appear in the opinion of the Supreme
Court.

The defendant submitted the following points:

1. That under the evidence the verdict must be for the de-
fendant. Refused. (Second assignment of error.)

2. That the plaintiff must prove a demand for the property
alleged to have been converted prior to bringing this suit, and
as no such demand has been proven your verdict must be for
the defendant. Refused. (Third assignment of error.)

3. That the failure of the plaintiff to comply with the terms
of the contract of September 18th, 1881, worked a forfeiture
of the personal property placed upon the property described

[Moorhead *v.* Scofield.]

in said contract, being the property alleged in his suit to have been converted, and your verdict should be for the defendant. Refused.    (Fourth assignment of error.)

The court charged the jury *inter alia,* as follows : That the payment of money as earnest, and the plaintiff's entrance into the possession of the premises with the consent of the vendor, and the erection of the improvements in accordance with the terms of the agreement, gave the plaintiff an equitable interest in the premises.

This interest was forfeited by his subsequent failure to pay the instalments of the purchase-money at the appointed time, and gave notes duly secured, unless the default was waived by the defendant.

[Whether such a waiver has occurred is for the jury. If you find that there has been an unexplained failure or delay in complying with the terms of the agreement, the verdict should be for the defendant.

If you render a verdict for the plaintiff, you must, in assessing the damages, deduct the amount still due for the purchase-money from the value of the goods.]    (First assignment of error.)

Verdict for the plaintiff for $2,000 and judgment thereon.

At the suggestion of the court, the plaintiff filed the following release in the case :

I hereby agree, upon the payment of the above judgment, the judgment in this case, and the return or accounting for my notes held by the defendant, and the payment of costs, to release the defendant from all claims and demands whatsoever, on account of the breach of any of the covenants of the agreement of September 8th, 1881, or on account of any failure on the part of the defendant to convey the real estate described in the said agreement, and release any right, title or interest, legal or equitable, which I may have in the same.

The defendant took this writ assigning for error the refusal of his points, and that portion of the general charge included in brackets.

*John G. Johnson* (*Hood Gilpin* with him), for plaintiff in error.

It is not deemed necessary to discuss any other assignment of error than that the learned judge erred in refusing to charge that the verdict should have been for the defendant.

1. There was no title in the plaintiff such as enabled him to maintain an action of trover against the defendant.

If we want authority for the very elementary principle we maintain, it is to be found in Farmers' Bank *v.* McKee, 2 Barr., 318.

2. No interference with the possession of the plaintiff by Moorhead, or by his grantee, Shallcross, was shown. The bill of sale was nothing more than the delivery of a paper title to one who was fully apprised of the plaintiff's rights.

In Andrews *v.* Shattuck, 32 Barbour, 396, it was held, to render a demand and refusal to deliver goods equivalent to direct proof of a conversion it must appear that the party had the actual possession at the time of the demand, and thus had power to comply with it, or that he had before that time parted with the goods fraudulently, with a view to evade the demand, or for his own benefit.

In view of what is suggested by the defendant in error that trover lies for an assertion of a right to dominion, not accompanied by actual taking or delivery of possession, we add a few authorities.

The law is summed up in Bigelow on Torts, 198 : For interesting discussions as to what constitutes conversions, see Fowler *v.* Hollins, L. R., 7 Q. B., 616 ; Hollins *v.* Fowler, L. R., 7 H. L., 757 ; England *v.* Cowley, L. R., 8 Exch., 126.

All of the cases cited by defendant in error are cases in which there was either physical possession of the *rem* itself, or of a bill of lading representing it, or where the defendant, without taking manual possession, had, in presence of the *rem*, asserted control over it and refused to allow the owner to take it. As to this latter point, compare the case of Gibbs *v.* Chase, 10 Mass., 128, cited by defendant in error, with England *v.* Cowley, L. R., 8 Exch., 126.

*Charles B. McMichael*, for defendant in error.

1. The title in the plaintiff was sufficient to enable the plaintiff to recover : Watts *v.* Lehman, 42 Leg. Int., 214 ; Winlack *v.* Geist, 42 Leg. Int., 298.

2. As to the second point, namely, that there was no trover or conversion, it is suggested that the following cases are in point :

The using a thing without the license of the owner and also a wrongful sale of it is a conversion : Keyworth *v.* Hill, 3 B. & A., 687 (5 E. C. L., 422) ; Lord Petre *v.* Henage, 12 Modern, 520 ; Featherstonaugh *v.* Johnson, 8 Taunt., 237 ; Lovell *v.* Martin, 4 Taunt., 799 ; Jackson *v.* Anderson, 4 Taunt., 24. It is sufficient if he exercises an authority over the goods against the will and to the exclusion of the owner by an unlawful intermeddling with them or assumes upon himself the propriety and right of disposing of them : Gibbs *v.* Chase, 10 Mass., 128 ; Millar *v.* Baker, 1 Met. R., 31 ; Fernald *v.* Chase, 37 Maine, 289.

Mr. Justice GORDON delivered the opinion of the court, February 15th, 1886.

On the 8th day of September, 1881, the defendant below, J. Barlow Moorhead, and the plaintiff, James K. Scofield, made and executed articles of agreement, the covenants and conditions of which are as follows: Moorhead agreed to sell to Scofield a certain property situated in the County of Oglethorpe, State of Georgia, known as the Guarantee Gold Mining Company's property. In consideration thereof the said vendee covenanted to pay to the vendor the sum of ten thousand dollars, in manner following, that is to say: Five hundred dollars cash in hand, fifteen hundred dollars on the 31st of December next following, and at this date the balance also was to be settled by the plaintiff's four notes with approved security, at three, six, nine and twelve months, with interest from date. On performance, as thus stated, by Scofield, Moorhead was to convey to him the property as above described. We may here, by way of explanation, say that this property, as we understand the matter, consisted of both land and personalty; the latter in the shape of engines, boilers, pumps, tools, and the like, was used on the land for the purposes of mining. The agreement then concluded as follows: "It is mutually agreed that if the said party of the second part should fail to make said second payment of fifteen hundred dollars cash, and notes with approved security for eight thousand dollars, as above provided, on or before the 31st day of December, 1881, he shall forfeit to the party of the first part the first payment of five hundred dollars above specified, together with all improvements that he may have made and all machinery which he may have placed upon said property. It is further agreed that upon the execution of these articles of agreement, and the payment of the said sum of five hundred dollars, the said party of the second part shall be entitled to take possession of the said mining property in the State of Georgia, and to use the same and the machinery thereon, and shall own the issue and product of such property until the 31st day of December, 1881, his title to such property to become absolute on making the second payment as above provided. Should the said party of the second part fail to make said second payment as above provided, the forfeiture of the five hundred dollars first payment, and the machinery and improvements, shall release him from all liability to claim and demand of the said party of the first part by reason of failure to make second payment."

Now, it will be observed that there is here a condition without the performance of which no property in and to the subject matter of the sale vested in the plaintiff. On the payment of the hand money he was to have possession, but he had title

to nothing until the making of the second payment, consisting, as the parties have put it, of the fifteen hundred dollars cash and the four secured notes. After the date of the articles and payment of the hand money, the plaintiff took possession of the premises, and added to the machinery and apparatus which he found thereon, property to the amount of about twenty-five hundred dollars. He also put George W. Shalcross in possession thereof as his superintendent and agent, who seems to have retained that possession for Scofield until the 3d of April, 1883, the date of the bill of sale which gives rise to the controversy in hand. When the time came for the execution of the notes, after an extension, he, Scofield, paid the fifteen hundred dollars, the cash part of the second payment, and gave his paper to Moorhead, but refused the required security. He says: "I called on Mr. Moorhead and told him I was prepared to offer him the four notes. He took them. I said the property would be security enough. I did not like to ask any one for security. I said the property was security enough." From this we conclude that Moorhead took the notes with the understanding that the title was to be continued in him until they were paid. In other words, the property was to remain, so far as title was concerned, just as it was prior to the settlement of the second payment. Two of these notes, one of $2,060 and the other of $2,070.60, remain unpaid, so that the plaintiff, by his own showing, has never acquired title to the property in controversy. It is urged, however, on part of the plaintiff that the defendant by his assignment of the 3d April, 1883, to Shallcross put it out of his power to comply with the contract, and also put it in the power of Shallcross to assume the possession of the property to the exclusion of him, the plaintiff. But the proposition here put rests upon a hypothesis destructive of the plaintiff's case; that is, that the defendant had power to sell, for if he had such power an improper exercise of it could, at most, but amount to a breach of his covenant, and to correct such breach certainly the action of trover would not lie. Morever, without reference to the question of a forfeiture on part of the plaintiff by a neglect to pay his notes when due, Moorhead, having in himself the legal title to the property, had unquestionably the right to sell it, and Shallcross having possession of the premises in right of Scofield, and as his agent, could not set up the want of notice as to his principal's title, hence, however general the words of the assignment to him, he could take no more than Moorehead had the power to sell—that is, the title without the right of possession. It would seem, however, that Shallcross's title is not susceptible of impeachment on part of Scofield, for the reason that it was at his own instance, and under an

[Middleton v. Stone.]

arrangement of himself and others looking to the stocking of the property, that Shallcross bought from the defendant. In answer to the question, " Had you not before that time assigned all the personal estate to George W. Shallcross?" the plaintiff answered "No ; not for all of it, only the part I sent down. The bill of March 8th, 1883, was made to Mr. Shallcross, because we were advised we could not issue stock until the property was vested in the company. I was to transfer all my interest to Shallcross for the company, and he was to get Mr. Moorhead to assign his interest to the company." Further on he continues : " I assigned my interest to Mr. Shallcross in all the property I put there. I did not assign the rest because I had not the title to the property. Mr. Moorhead never refused to give me title upon payment of these notes. I never made any demand of Mr. Moorhead except this suit." This, then, is the plaintiff's case, made out from his own evidence ; a covenant with which he never complied ; an admission that he has no title to the property for which he seeks to recover ; that his adversary has not as yet been in default, and that with his own knowledge and assent, and to accomplish his own purpose, Shallcross, his agent, made the purchase now complained of. What, under these circumstances, under the evidence thus produced, can we possibly do but conclude that, so far as the suit in hand is concerned, the plaintiff has no cause of action.

The judgment is reversed, and a new *venire* is ordered.